# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

ACE AMERICAN INSURANCE COMPANY,   )
        Plaintiff,   )
                                 )
v.                                  )   No. 10-0624-CV-W-FJG
                                 )
APCOMPOWER, INC.               )
        Defendant.   )

## ORDER

Pending before the Court are (1) Defendant's Motion to Exceed Page Length of Suggestion (Doc. No. 11); and (2) Defendant's Motion to Dismiss, or, in the Alternative, to Stay (Doc. No. 12). As an initial matter, defendant's motion to exceed page limits (Doc. No. 11) will be **GRANTED**, and defendant's suggestions in support of its motion to dismiss (Doc. No. 13) will be considered properly filed. Additionally, defendant's request for oral argument (see Doc. No. 12) will be **DENIED**.

## I.    Background

This action arises out of a crane accident that occurred on May 23, 2008, at the Iatan Power Plant located near Weston, Missouri. In August 2006, the owner and operator of the power plant, Kansas City Power & Light Company ("KCP&L"), entered into a contract with Alstom Power Inc. ("Alstom Power") to engineer, design, and construct an additional boiler and to make other upgrades to the facility (the "Project"). Defendant APCom is a wholly owned subsidiary of Alstom Power and contracted with Alstom Power to perform certain work on the Project. See Doc. No. 1 at ¶7. Some of the work on the Project involved the use of a large crane, and APCom leased the crane and a crane operator from Maxim. See Doc. No. 1 at ¶8.

On May 23, 2008, the crane tipped over while being operated, resulting in the death of one of APCom's employees, Terry Stimpson, who was working in the vicinity of the crane, and causing property and delay damages to the Project. See Doc. No. 1 at ¶18.

On June 6, 2008, the widow and children of Mr. Stimpson sued Maxim and certain other parties for negligence in the Circuit Court of Platte County, Missouri.

The Project owner, KCP&L, had procured several insurance policies to cover the contractors and subcontractors on the Project, all as part of an "Owner Controlled Insurance Program" ("OCIP"). As part of the OCIP, Ace issued the Commercial General Liability ("CGL") policy for the Project, insuring KCP&L and the various tiers of enrolled contractors and subcontractors for, among other things, claims arising out of personal injuries occurring during the course of the Project. <u>See</u> Doc. No. 1 at ¶15 (the Policy is found at Doc. No. 13, Ex. C). Ace alleges that, under the CGL policy, it provided counsel, paid for the defense of Maxim, and funded a settlement in the Platte County lawsuit on behalf of Maxim. <u>See</u> Doc. No. 1 at ¶19.

Separate from the OCIP, Maxim also maintained insurance coverage against certain property damage to the crane. Fireman's Fund Insurance Company and Lexington Insurance Company both underwrote such coverage for Maxim and have alleged that they made payment to Maxim for damage to the crane resulting from the collapse.

On May 13, 2009, APCom filed a declaratory judgment suit against Maxim and its property insurance carriers in state court in Hartford, Connecticut. <u>APComPower Inc. v. Maxim Crane, L.P., et al.</u>, Docket No. HHD-CV-09-4044445-S, Superior Court for the Judicial District of Hartford, at Hartford, Connecticut, dated May 13, 2009 (the "Connecticut Complaint") (Doc. No. 13, Ex. B). In the Connecticut Complaint, APCom seeks a judicial declaration on several issues, including: (i) which terms constitute the operative contract between Maxim and APCom, given the amendments and superseding revisions agreed upon by the parties; (ii) whether Maxim had released APCom of liability related to the crane in exchange for a payment after the collapse; (iii) whether Maxim agreed to indemnify APCom for losses related to the lease of the crane under either the Maxim– APCom contract or the written release; (iv) whether any provision purporting to require APCom to indemnify Maxim or its insurers for Maxim's own negligence is enforceable; (v) whether

Maxim was grossly negligent in causing the collapse; and (vi) what caused the collapse.

On August 6, 2009, Maxim and its property carriers filed a suit for monetary relief against APCom in state court in Pittsburgh, Pennsylvania. See Maxim Crane Works, LLC, et al. v. APComPower Inc., Civil Action No. GD 09-13927, Court of Common Pleas of Allegheny County, Pennsylvania (the "Pennsylvania Complaint") (a copy of which is attached to Doc. No. 13 as Ex. A). Among other things, Maxim alleged that APCom breached the Maxim–Alstom contract by failing to indemnify it for losses caused by the collapse and for failing to procure certain insurances. See Pennsylvania Complaint at Count III. Defendant APCom argues that these claim are identical to the claims that Ace, standing in Maxim's shoes, advances in the present lawsuit.

In response to the Pennsylvania action, APCom moved to stay proceedings pending the outcome of the Connecticut action. By order dated April 27, 2010, the Pennsylvania court denied the motion to stay, noting, "Pennsylvania appellate court state law requires trial courts to honor the choice of forum of a party seeking monetary relief." See Doc. No. 21, Ex. A. Following denial of the motion to stay, APCom and Alstom Power, Inc. (which intervened in the Pennsylvania suit) filed a four-count counterclaim against Maxim. See Doc. No. 13, Ex. D. According to APCom, the parties have resolved to stay the Connecticut action pending the adjudication of the Pennsylvania action. Notably, Ace is not a party to either the Pennsylvania or the Connecticut actions.

Ace, a Pennsylvania corporation with a Pennsylvania principal place of business, has allegedly taken an assignment of Maxim's rights under the Maxim-APCom contract, and brings the present action, asserting two counts of breach of contract. See Doc. No. 1, ¶ 1. Defendant argues that Ace's breach-of-contract claims place squarely at issue the same issues, defenses, and claims that Maxim has already placed at issue in the Pennsylvania action (and that APCom had placed at issue in the Connecticut action).

## II.     Motion to Dismiss, or in the Alternative, Motion to Stay (Doc. No. 12)

Defendant APCom argues that the claims against it must be dismissed pursuant to

Fed. R. Civ. P. 12(b)(6), due to the anti-subrogation doctrine. Defendant APCom also argues that this Court should abstain from hearing this matter under the Colorado River abstention doctrine, and that the Court should either dismiss or stay this matter pending resolution of the related state-court cases.

### A. Motion to Dismiss under Rule 12(b)(6)

#### 1. Standard

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), the Supreme Court rejected the "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . .on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . .

Id. at 1964-65 (internal citations and quotations omitted). The Court went on to note that, "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Id. at 1965 (internal citations and quotations omitted). The Court emphasized that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, the complaint must be dismissed." Id. at 1974. "In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997).

In deciding a Rule 12(b)(6) motion, courts may consider the complaint as well as

documents incorporated into the complaint by reference. <u>Moses.com Sec., Inc. v.</u>
<u>Comprehensive Software Sys.</u>, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005). Other permissible
sources include "materials that are necessarily embraced by the pleadings." <u>Noble Sys.</u>
<u>Corp. v. Alorica Central, LLC</u>, 543 F.3d 978, 982 (8th Cir. 2008) (internal quotation
omitted).

2. Analysis

Defendant argues that it was a co-insured with Maxim under the Ace OCIP policy.
Under Missouri law, an insurer cannot subrogate to or take an assignment of the rights of
one of its insureds to seek indemnity from another of its insureds:

> Missouri law recognizes the anti-subrogation rule, which is that where an
> insurance company attempts to recover, as a subrogee, from a coinsured
> generally covered under the policy, whose negligent act occasioned the loss,
> the action must fail in the absence of design or fraud on the part of the
> coinsured. The Missouri courts have held that allowing an insurer to sue for
> recovery against one of its own insured would violate the basic principles of
> subrogation and equity, as well as violate sound public policy. The anti-
> subrogation rule prevents an insurer from passing its loss to the insured,
> thereby avoiding coverage for the very risk for which it accepted premiums,
> and it prevents insurers from having a conflict of interest that might deprive
> an insured of a vigorous defense.

<u>Reliance Ins. Co. v. Chitwood</u>, 433 F.3d 660, 662-63 (8th Cir. 2006) (<u>citing</u> <u>Sherwood Med.</u>
<u>Co. v. B.P.S. Guard Servs., Inc.</u>, 882 S.W.2d 160, 162 (Mo. Ct. App. 1994) ("The 'no
subrogation' rule…is recognized in Missouri…[and] is based on the logical premise that an
insurer cannot seek subrogation from its insured.").

Defendant argues that, considering the allegations of Ace's complaint and the Ace
OCIP policy (which is incorporated by reference into the complaint), as well as "a single
indisputable admission by Ace," APCom was "demonstrably a co-insured with Maxim under
the Ace OCIP policy." Doc. No. 13. Although the Court agrees with defendant that the Ace
OCIP policy was incorporated by reference into the complaint, the Court is unable to

determine on the record properly before it on a Rule 12(b)(6) motion to dismiss that APCom was a co-insured under the Ace OCIP policy. The complaint, of course, does not allege that APCom was a co-insured under the Ace OCIP policy. In addition, the Ace OCIP policy itself does not indicate that APCom was enrolled as a co-insured thereunder. Defendant argues that plaintiff has admitted in another context (a letter to counsel for Alstom and Maxim after the crane accident) that Alstom was an enrolled contractor in the OCIP. However, this letter is not properly before the Court on a motion to dismiss, as it is not incorporated into plaintiff's complaint at all, nor is it necessarily embraced by the pleadings. The policy (Doc. No. 13, Ex. C) gives no indication as to who was an enrolled contractor. Thus, the Court is unable to determine that defendant APCom is an insured under the Ace OCIP policy based on the facts properly before it. Therefore, the motion to dismiss due to the anti-subrogation doctrine will be **DENIED.**[1]

## B. Colorado River Abstention

In the alternative, defendant argues that a stay pursuant to the Colorado River abstention doctrine would be appropriate here. Defendant believes a stay would prevent the needless waste of federal judicial resources, and would allow for the adjudication of the same legal and factual issues in Pennsylvania state court.

### 1. Standard

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) allows district courts to abstain from exercising their jurisdiction when there is a parallel state court action pending. In order for state and federal suits to be parallel, "a substantial similarity must exist between the state and federal proceedings, which similarity occurs

_____

[1]Further, it is unclear whether a wholly owned subsidiary of a purportedly enrolled contractor (as APCom purportedly is to Alstom Power) would be covered under the OCIP policy if the subsidiary was not enrolled separately under the policy. See plaintiff's response, Doc. No. 20, pp. 7-9. Thus, even if the Court were inclined to convert this motion to dismiss into a motion for summary judgment and consider facts beyond those in the complaint, the Court would still be unable to grant defendant's motion at this time.

when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." Fru-Con. Const. Corp. v. Controlled Air, Inc., 574 F.3d 527, 535 (8th Cir. 2009). "Moreover, in keeping with the Supreme Court's charge to abstain in limited instances only, jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings." Id.

Where actions are parallel, a federal court will abstain from the exercise of its jurisdiction over the duplicative litigation if the balance of six factors weighs in favor of a stay: (i) whether there is a *res* over which one court has established jurisdiction; (ii) the inconvenience of the federal forum; (iii) the desire to avoid piecemeal litigation; (iv) the relative progress of the cases; (v) whether state or federal law controls; and (vi) the adequacy of the state forum to protect the federal plaintiff's rights. See United States Fidelity & Guar. Co. v. Murphy Oil USA, Inc., 21 F.3d 259, 263 (8th Cir. 1994). No single factor is determinative; instead these factors are to be applied in a "pragmatic, flexible manner with a view to the realities of the case at hand." See Darsie v. Avia Group Int'l, Inc., 36 F.3d 743, 745 (8th Cir. 1994) (per curiam). In examining these factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop., Inc., 48 F.3d 294, 297 (8th Cir. 1995)(citing Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16 (1983)). The "task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justification,' that can suffice under Colorado River to justify the surrender of that jurisdiction." Id. at 297 (citing Moses H. Cone, 460 U.S. at 25-26 (emphasis in original)).

2.    Analysis

a.    Are the suits parallel?

Defendant indicates that this action and the Pennsylvania state-court action are parallel, despite the fact that Ace is not a party to the Pennsylvania action. Defendant argues that Ace's claims in the present action are premised on an assignment of Maxim's contract claims, which are also the subject of the Pennsylvania action. Defendant indicates

that the breach-of-contract claims in the present suit against APCom are based on the exact same contract provisions already at issue in the Pennsylvania state-court action. Defendant indicates the following issues will be decided in both cases: (1) what constitutes the contract between Maxim and APCom; (2) does the contract provide for indemnification of Maxim for its own negligence; (3) did Maxim release APCom; (4) does the contract or release require Maxim to indemnify APCom; (5) was Maxim grossly negligent; and (6) who and what caused the crane collapse. Defendant indicates that there is a substantial likelihood that the state proceedings will fully dispose of the claims presented in federal court, as the same issues are being adjudicated in state court.

Plaintiff opposes, indicating that the state case will not fully dispose of all claims in the federal case. Plaintiff first notes that there is no likelihood that the Pennsylvania case will dispose of all claims in the present case, as the parties are not even the same. Further, plaintiff indicates that whether APCom had knowledge of Ace's subrogation right when it entered into a "secret" release signed by a Maxim employee in Texas is an issue that will not be litigated in Pennsylvania (noting that Ace does not stand in the shoes of Maxim regarding the secret release, as an insured cannot release a known subrogation interest of an insurer). Plaintiff also notes that the damages in the two lawsuits are different, as in Pennsylvania Maxim is seeking economic loss damages for an uninsured loss (including rental income, Maxim's property insurance deductible, an OSHA fine, attorney's fees, costs and expenses), whereas here Ace is seeking damages based on payments made and expenses incurred because of the death of Mr. Stimpson. Plaintiff indicates "Whether the indemnification provisions in the lease contract between Maxim and APCom cover such items as OSHA fines and economic losses is a very different issue than whether they cover damages related to payments based upon defense and settlement of the Missouri Lawsuit." Doc. No. 21, p. 7. Other issues that will not be litigated in Pennsylvania include: (1) whether Ace is a third-party beneficiary of the indemnification clause in the crane lease between Maxim and APCom, (2) whether APCom is an insured under the Ace policy, and

(3) the negligence claims.

In reply, defendant indicates that the alleged contract breaches are identical (comparing paragraphs 13, 31-32, 46-47, 48-49, 51, and 52 of the Pennsylvania complaint with paragraphs 11, 26, 29, 30, 32, and 33 of the present complaint), that the negligence claims in the Pennsylvania case are a red-herring as APCom will assert as a defense in this action that Maxim cannot obtain contractual indemnity for its own negligence, and Ace is claiming a liquidated sum as its damages in the present action which should minimize concerns about the difference in the types of damages sought in the two actions. Defendant also states it is immaterial that Ace sued in its own name in this action; defendant indicates that Ace has retained counsel for Maxim in the Pennsylvania action and will be defending Maxim against APCom's counterclaims in that suit.

The Court believes that defendant has not demonstrated that the suits are parallel at this point. In particular, the Court is not convinced that Ace and Maxim's interests are the same, particularly in relation to the purported "secret" release allegedly signed by Maxim without the knowledge of Ace. Accordingly, the Court finds that the motion to stay or dismiss pursuant to Colorado River abstention should be **DENIED.**

      b.     Does the six-factor exceptional circumstances test support a stay?

As an alternative ground for its decision to not abstain, the Court will also consider the exceptional circumstances test.

      (i) Is there a *res* over which one court has established jurisdiction?

Both parties agree that neither this Court nor the Pennsylvania state court have assumed jurisdiction over a *res*, so this factor is irrelevant.

      (ii) Is the federal forum inconvenient?

Both parties agree that this factor is neutral because proceeding before this Court is not substantially less convenient to APCom than proceeding in Pennsylvania. Accordingly, the Court finds this factor irrelevant.

      (iii) Would proceeding in both courts create piecemeal litigation?

9

As the Supreme Court makes clear, this is the predominant factor in the exceptional circumstances analysis. See, e.g., Moses H. Cone, 460 U.S. at 16, 21. Conflicting opinions between state and federal courts "cause unwarranted friction between state and federal courts, a result which is obviously undesirable and avoidable. . . ." Employers Ins. of Wausau v. Missouri Electr. Works, Inc., 23 F.3d 1372, 1375 (8th Cir. 1994). Defendant notes that Maxim took the position in its Pennsylvania and Connecticut briefs that the Pennsylvania state-court action "is the most comprehensive and appropriate means of redress" and would fully and finally determine the entirety of the legal relationship between Maxim and APCom. Defendant argues that Ace, as a subrogee to Maxim, cannot escape the position argued by its insured.

In response, plaintiff indicates that piecemeal litigation will not result because (1) while both this case and the Pennsylvania case involve an indemnification clause in the same contract, the damages sought are different, and whether the indemnification clause in the contract provides indemnification for an OSHA fine and economic losses has no bearing on whether the clause provides for indemnification of a wrongful death settlement payment; (2) the actions are not parallel, as plaintiff is not a party to the Pennsylvania action, whether Maxim released APCom from damages will not determine whether APCom was released from Ace's subrogation rights, and the third-party beneficiary theory and various negligence claims will not be litigated in Pennsylvania; (3) Maxim's arguments made in the Connecticut and Pennsylvania cases are not applicable here, as the Pennsylvania and Connecticut actions involved the same parties and the same issues, and did not address the claims made here related to the wrongful-death settlement; and (4) while there will be some similar issues in this case and the Pennsylvania case, there are numerous issues that will not be litigated in the Pennsylvania case.

Although some of the issues in the Pennsylvania action and the present action may be similar, the Court cannot find that this factor weighs heavily in the exceptional circumstances test, as plaintiff is not a party to the state court action and plaintiff is claiming

damages separate from those claimed in the state court action.  Accordingly, this factor is neutral at best.

(iv) Which case has progressed further?

Defendant believes that the relative progress of the two actions favors abstention, as the Pennsylvania action has progressed further.  Defendant notes that the action pending in this Court has only begun, as APCom immediately responded to the complaint with the motion to dismiss or to stay.  Defendant indicates the Pennsylvania action was filed almost a year prior to this action, and the Pennsylvania court has already ruled on a motion to dismiss or stay, an answer and counterclaim has been filed, and written discovery has been propounded.  Plaintiff responds that being first-filed is not dispositive: "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 21 (1983).  Plaintiff indicates that the progress in the Pennsylvania case demonstrates that it is proceeding at a snail's pace, and the only things that have happened in Pennsylvania that have not happened here are that the Pennsylvania court has ruled on APCom's motion to stay, and APCom filed an answer and counterclaim.

The Court finds that the Pennsylvania action has not proceeded substantially further than the action pending in this Court.  Therefore, the Court finds this factor to be neutral.

(v) Does state or federal law control?

Defendant indicates that Maxim argued in support of its motion to dismiss or stay the Connecticut action in favor of the Pennsylvania action, that the Pennsylvania courts were the most appropriate arbiters of many of the legal questions between the parties. Defendant indicates Maxim made the same arguments before the Pennsylvania court. Defendant argues, therefore, that as state law controls, this Court should abstain.  Plaintiff responds that while it is clear that state law controls this action, it is not clear whether Missouri, Pennsylvania, Texas, or another state's laws will apply to APCom's defenses.

11

However, plaintiff notes APCom has used Missouri law in its anti-subrogation defense, discussed above. Plaintiff indicates that Pennsylvania courts have little, if any, experience applying Missouri law, and therefore this factor does not favor abstention or at best is neutral.

The presence of state law issues weighs in favor of abstention only in rare circumstances. <u>Moses H. Cone</u>, 460 U.S. at 26. Given that the laws of several states might be applicable to this matter, the Court finds that this factor is neutral.

<u>(vi) Is the state forum adequate to protect the federal plaintiff's rights?</u>

Defendant indicates that both forums would adequately protect plaintiff's rights, making this factor neutral. Plaintiff, however, notes that the state forum will not protect its rights, as it is not even a party to the Pennsylvania action. <u>See e.g.</u>, <u>Sentinel Ins. Co. v. Haines</u>, 2008 WL 695402, *5 (W.D. Mo., March 12, 2008)(reconsideration granted on other grounds). Plaintiff states that it is not saying that a Pennsylvania state court is somehow biased against it; instead, since it is not a party to the Pennsylvania action and the attorneys representing Maxim and its property insurers have no fiduciary or ethical duty to represent or otherwise protect the interests of Ace, this factor cannot favor abstention. In reply, defendant indicates that this claim ignores the fact that Ace will be actively involved in the Pennsylvania litigation, as it is now providing the defense for Maxim there on APCom's counterclaims.

The Court finds that, as plaintiff is not a party to the Pennsylvania litigation, this factor weighs against abstention.

Accordingly, as the Court finds that the exceptional circumstances factors either weigh against abstention or are neutral, the Court will not abstain from hearing this matter.

## III. Conclusion

Therefore, for the foregoing reasons: (1) Defendant's Motion to Exceed Page Length of Suggestion (Doc. No. 11) is **GRANTED**; and (2) Defendant's Motion to Dismiss, or, in

the Alternative, to Stay (Doc. No. 12) is **DENIED**.

**IT IS SO ORDERED.**

          /s/  FERNANDO  J.  GAITAN,  JR.
Fernando J. Gaitan, Jr.
Chief United States District Judge

Dated:   11/17/10
Kansas City, Missouri